## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| JOHN SADLER and GERIANN GATZIOLIS, *on behalf of themselves and all others similarly situated*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 2:14-mn-00001-DCN<br>No. 2:14-cv-03051-DCN |
| PELLA CORPORATION, | ) ) | |
| Defendant. | ) ) ) | **ORDER** |

This matter is before the court on a motion to dismiss filed by Pella Corporation ("Pella"). The court grants in part and denies in part Pella's motion as set forth below.

### I. BACKGROUND

Plaintiff John Sadler ("Sadler") installed Pella windows in his Des Plaines, Illinois home in late 2002 and early 2003. Am. Compl. ¶ 30. Sadler discovered fungus growing under his windows in 2011 and discovered rot in his windows in 2013, at which time he contacted Pella. Id. ¶ 34. Pella offered to replace the windows, but indicated that Sadler would have to pay for the cost of the replacement windows and the cost of installation. Id. ¶ 35. Unsatisfied, Sadler declined Pella's offer. Id.

Plaintiff Geriann Gatziolis's ("Gatziolis") St. Charles, Illinois home was built in 2004 and Pella windows were installed the same year. Id. ¶ 36. Gatziolis experienced problems with her windows about four years after they were installed, but did not observe any indication of rot at that time. Id. ¶ 40. Her windows began to exhibit worse signs of failure in 2011, at which point she contacted Pella. Id. Pella inspected Gatziolis's home and denied that her windows were defective. Id.

1

Plaintiffs contend that their windows suffer from various design deficiencies, including "a defect in the design of the sill extrusion and sill nailing fin attachment[,] as well as a defect in the design of [sic] allowing a gap between the jamb gasket and the sill gasket." Id. ¶ 51. Plaintiffs allege that due to these design defects, water is permitted to be trapped between the aluminum and the operable wood frame, permitting leaks and causing damage to the windows and other property within the home. Id. Plaintiffs further allege that Pella knew, or but for its negligence should have been aware, of the defects. Id. ¶ 24.

On May 5, 2014, plaintiffs filed a class action complaint against Pella in the United States District Court for the Northern District of Illinois, alleging jurisdiction based on diversity of citizenship. On June 10, 2014, plaintiffs amended their complaint, bringing the following ten causes of action: (1) negligence; (2) breach of implied warranty of merchantability; (3) breach of implied warranty of fitness for a particular purpose; (4) breach of express warranty; (5) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (6) fraudulent misrepresentation; (7) fraudulent concealment; (8) unjust enrichment; (9) violation of the Magnuson-Moss Warranty Act ("MMWA"); and (10) declaratory relief.

On July 30, 2014, the United States Judicial Panel on Multidistrict Litigation transferred plaintiffs' case to this court as part of the consolidated multidistrict litigation. Pella filed the instant motion to dismiss on August 29, 2014. Plaintiffs opposed the motion on October 17, 2014, and Pella replied on October 31, 2014. The motion has been fully briefed and is ripe for the court's review.

## II.  STANDARDS

### A.  Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion to dismiss, the court must "accept[] all well-pleaded allegations in the plaintiff's complaint as true and draw[] all reasonable factual inferences from those facts in the plaintiff's favor."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief."  Id. at 679.  A complaint must contain sufficient factual allegations in addition to legal conclusions.  Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "Facts pled that are 'merely consistent with' liability are not sufficient."  A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

### B.  Applicable Law

This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law.  Gasperini v. Ctr. for

Humanities, Inc., 518 U.S. 415, 427 (1996). "In multidistrict litigation, the law of the transferee circuit governs questions of federal law." In re KBR, Inc., 736 F. Supp. 2d 954, 957 (D. Md. 2010) modified on reh'g sub nom. In re KBR, Inc., Burn Pit Litig., 925 F. Supp. 2d 752 (D. Md. 2013) vacated and remanded on other grounds, 744 F.3d 326 (4th Cir. 2014); see also In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907, 911 (8th Cir. 2004); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993); In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987); cf. Bradley v. United States, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (applying Fourth Circuit law to questions of federal law in a case transferred from the Fifth Circuit). Therefore, this court must apply Illinois substantive law and Fourth Circuit procedural law.

### III. DISCUSSION

#### A.    Implied Warranty Claims

Pella argues that plaintiffs' claims for breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose fail because they are barred by the statute of limitations. Pella also argues that: (i) Gatziolis's implied warranty claims fail because she cannot establish privity with Pella; and (ii) plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose fails because the windows were used for their ordinary purpose. The court will address each argument in turn.

#### 1.    Statute of Limitations

Under Illinois law, the statute of limitations for a breach of warranty claim is four years. 810 Ill. Comp. Stat. 5/2-725(1). Ordinarily, the cause of action accrues when the breach occurs. 810 Ill. Comp. Stat. 5/2-725(2). A breach occurs when tender of delivery

is made, unless the warranty at issue "explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance," in which case "the cause of action accrues when the breach is or should have been discovered." Id. "[I]mplied warranties by definition cannot explicitly extend to future performance." Stoltzner v. Am. Motors Jeep Corp. Inc., 469 N.E.2d 443, 445 (Ill. App. Ct. 1984). Pella argues because Sadler's windows were installed in 2003 at the latest, Am. Compl. ¶ 30, and Gatziolis's windows were installed in 2004, Id. ¶ 36, the statute of limitations for each plaintiff's claim expired by 2008, about six years before the current action was filed.

Plaintiffs argue that the statute of limitations was tolled by the doctrine of equitable estoppel because Pella concealed the defect from plaintiffs and other window owners.[1] Id. ¶¶ 67, 68. Pella also contends that plaintiffs have failed to adequately plead equitable estoppel.

Equitable estoppel tolls the running of a statute of limitations when the party claiming estoppel demonstrates that:

> (1) the other party misrepresented or concealed material facts; (2) the other party knew at the time the representations were made that the representations were untrue; (3) the party claiming estoppel did not know that the representations were untrue when the representations were made and when they were acted upon; (4) the other party intended or reasonably expected the representations to be acted upon by the party claiming estoppel or by the public generally; (5) the party claiming estoppel reasonably relied upon the representations in good faith and to their detriment; and (6) the party claiming estoppel has been prejudiced by his reliance on the representations.

---

[1]     Plaintiffs also argue that their implied warranty claims were tolled during the pendency of Saltzman v. Pella Corporation (N.D. Ill. 06-4481) under the doctrine of class action tolling. Because the court finds that plaintiffs' claims were tolled under the doctrine of equitable estoppel, the class action tolling issue is not dispositive.

Parks v. Kownacki, 737 N.E.2d 287, 296 (2000).  Here, plaintiffs' equitable estoppel

claim appears to be based on a theory of fraudulent concealment.[2]  Compl. ¶¶ 67, 68

(stating that "Pella has known of the defects . . . and has concealed from owners of the

[w]indows . . . the defective nature of the windows," and that "[g]iven Pella's failure to

disclose this known but non-public information . . . Pella is estopped from" enforcing the

statute of limitations).

> Illinois law provides that:
>
> If a person liable to an action fraudulently conceals the cause of such
> action from the knowledge of the person entitled thereto, the action may
> be commenced at any time within 5 years after the person entitled to bring
> the same discovers that he or she has such cause of action, and not
> afterwards.

735 Ill. Comp. Stat. 5/13-215.  As with equitable estoppel generally, a plaintiff invoking

the doctrine of fraudulent concealment must show "affirmative acts by the defendant

which were designed to prevent, and in fact did prevent, the discovery of the claim."

Cangemi v. Advocate S. Suburban Hosp., 845 N.E.2d 792, 804 (Ill. App. Ct. 2006)

(citation omitted); see also Dancor Int'l, Ltd. v. Friedman, Goldberg & Mintz, 681

N.E.2d 617, 623 (Ill. App. Ct. 1997) ("The concealment of a cause of action sufficient to

toll the statute of limitations requires affirmative acts or representations designed to

prevent discovery of the cause of action or to lull or induce a claimant into delaying the

filing of his claim.").  "Mere silence of the defendant and the mere failure on the part of

---

[2]    Courts have noted some confusion as to whether Illinois recognizes fraudulent concealment as a
separate doctrine from equitable estoppel.  See Rotec Indus., Inc. v. Rotek, Inc., 2006 WL 2054379, at *7
n.5 (N.D. Ill. July 19, 2006).  In Singletary v. Cont'l Ill. Nat.'l Bank & Trust Co. of Chicago, 9 F.3d 1236,
1241 (7th Cir. 1993), the Seventh Circuit stated that "[fraudulent concealment] is, strictly, a subset of
[equitable estoppel]."  The parties both appear to share this view, as neither has questioned the applicability
of cases dealing with the doctrine of fraudulent concealment.  Therefore the court will proceed on this
view.

the plaintiff to learn of a cause of action do not amount to fraudulent concealment."
Cangemi, 845 N.E.2d at 804.

Pella argues that plaintiffs' have not pleaded the requisite "affirmative act" because their estoppel argument is based on Pella's "failure to disclose." Am. Compl. ¶ 68. Plaintiffs argue that equitable estoppel may be established by acts of concealment and that Pella engaged in such acts by failing to disclose the defect to customers. Pl.'s Resp. at 10–11.

It is clear that equitable estoppel, particularly in the form of fraudulent concealment, can be established by "acts of concealment," including the breach of a duty to disclose material information. DeLuna v. Burciaga, 857 N.E.2d 229, 246 (Ill. 2006); see also Parks, 737 N.E.2d at 296 ("To establish equitable estoppel, the party claiming estoppel must demonstrate that: (1) the other party misrepresented or concealed material facts . . . .") (emphasis added). "A duty to disclose a material fact may arise out of several situations[,] [f]irst, if plaintiff and defendant are in a fiduciary or confidential relationship" and "[s]econd, . . . where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." DeLuna, 857 N.E.2d at 246 (quoting Connick v. Suzuki Motor Co., 675 N.E.2d 584, 593 (Ill. 1996)). A duty to disclose material information can also arise "when the defendant's acts contribute to the plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct plaintiff's misapprehension." Coca-Cola Co. Foods Div. v. Olmarc Packaging Co., 620 F. Supp. 966, 973 (N.D. Ill. 1985).

The amended complaint alleges actions by Pella which could plausibly have contributed to plaintiffs' misapprehension that the windows were not defective:

7

specifically, that Pella brought the windows to market and undertook active and ongoing steps to conceal the defect.  Am. Compl. ¶ 153, 160.  The amended complaint also alleges that Pella knew of the defect and knew that customers would not be able to detect it, even after diligent inspection, but chose to omit any mention of the defect in the course of selling and distributing the windows.  Id. ¶ 23, 28, 29.  Though these allegations are somewhat conclusory, courts have found similar allegations sufficient to establish the possibility of a duty to disclose at the motion to dismiss stage.  See Design Ideas, Ltd. v. Bed Bath & Beyond, Inc., 2013 WL 2489174, at *5 (C.D. Ill. June 10, 2013) (denying motion to dismiss counterclaim for fraudulent concealment where counterclaimant alleged that counterclaim defendant "intentionally concealed" a material fact during contract negotiation, even though counterclaimant did not allege any affirmative act that created their misapprehension).  Therefore, the court finds that plaintiffs have sufficiently pleaded facts showing that Pella breached a duty to disclose the defect.

Pella also argues that plaintiffs have failed to plead their fraudulent concealment claim in compliance with the standards of Federal Rule of Civil Procedure 9(b).[3]  Def.'s Resp. 20–21.  Rule 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud."  This rule extends to claims for fraudulent concealment.  Beauchem v. Rockford Prods. Corp., 2004 WL 432328, at *1 (N.D. Ill. Feb. 6, 2004) ("Fraudulent concealment must be pled with particularity.");  Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 195 (M.D.N.C. 1997) ("[E]ven in a case of fraudulent concealment or omission, a plaintiff must comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b).").  Generally, in order to satisfy Rule 9(b),

---

[3]    Pella advances this argument against plaintiffs' separate claim for relief on the ground of fraudulent concealment, not in the context of tolling the statute of limitations for plaintiffs' implied warranty claims.  Nevertheless, the argument is equally applicable here.

the complaint must allege the "who, what, when, where and how of the alleged fraud,"
U.S. ex rel. Ahumada v. NISH, 756 F.3d 268, 280 (4th Cir. 2014), or the "first paragraph
of any newspaper story."  Great Plains Trust Co. v. Union Pac. R.R. Co., 492 F.3d 986,
995 (8th Cir. 2007); see also U.S. ex rel. Elms v. Accenture LLP, 341 F. App'x 869, 872
(4th Cir. 2009) (holding Rule 9(b) requires a plaintiff to allege "the time, place, and
contents of the false representations, as well as the identity of the person making the
misrepresentation and what he obtained thereby").

Rule 9(b) operates somewhat differently when evaluating claims based on
omissions.  Breeden, 171 F.R.D. at 195 (recognizing that the usual Rule 9(b)
requirements "work[] well for cases of affirmative misrepresentations because such are
discrete, observable events which can be particularized," while "fraud by omission . . . is
by its very nature, difficult to plead with particularity" (quoting Daher v. G.D. Searle &
Co., 695 F. Supp. 436, 440 (D. Minn. 1988))).  In order to plead fraud by omission in
compliance with the pleading requirements of Rule 9(b), "a plaintiff usually will be
required to allege the following with reasonable particularity:"

> (1) the relationship or situation giving rise to the duty to speak, (2) the
> event or events triggering the duty to speak, and/or the general time period
> over which the relationship arose and the fraudulent conduct occurred, (3)
> the general content of the information that was withheld and the reason for
> its materiality, (4) the identity of those under a duty who failed to make
> such disclosures, (5) what those defendant(s) gained by withholding
> information, (6) why plaintiff's reliance on the omission was both
> reasonable and detrimental, and (7) the damages proximately flowing from
> such reliance.

Id.

As discussed above, plaintiffs have sufficiently pleaded facts giving rise to Pella's
duty to speak by alleging actions by Pella which could have contributed to plaintiffs'

misapprehension that the windows were not defective.  Plaintiffs have also pleaded:  the general content of the information that was withheld, i.e., the existence of the defect; what Pella gained by withholding such information, i.e., increased window sales; why plaintiffs' reliance on Pella's omission was reasonable and detrimental; and damages. See Am. Compl. ¶¶ 164 (alleging plaintiffs "suffered a loss of money . . . as a result of Pella's fraudulent concealment and nondisclosure because [] they would not have purchased the [w]indows on the same terms if the true facts concerning the windows had been known").  The court finds these allegations sufficient to satisfy the requirements of Rule 9(b) and adequately state a claim that Pella fraudulently concealed the basis of their implied warranty claims.

On this fraudulent concealment theory, plaintiffs had five years from the time they discovered the basis of their implied warranty claims to bring such claims.  735 Ill. Comp. Stat. 5/13-215.  Both plaintiffs appear to have discovered the defect, and thus the basis for their claim, in 2011—when Sadler discovered fungus growing under his windows and Gatziolis discovered signs of rot in her windows.[4]  See Am. Compl. ¶¶ 34, 40.  Plaintiffs filed the present action in 2014, well within the five year period permitted by 735 Ill. Comp. Stat. 5/13-215.  Therefore, the court finds that plaintiffs' implied warranty claims are not barred by the statute of limitations, under the doctrine of equitable estoppel.

---

[4]     Though the amended complaint also states that Gatziolis "had problems with her [w]indows approximately four years after installation," it specifically indicates there was "no indication of rot" at that time.  Am. Compl. ¶ 40.  Without more information regarding the nature of these problems, it is plausible that these "problems" were insufficient to put Gatziolis on notice of the defect.

2.     **Privity and Gatziolis**

Pella also argues that Gatziolis's implied warranty claims fail because she was not in privity with Pella.

Illinois law does not allow plaintiffs to assert implied warranty claims against product manufacturers where the plaintiffs did not purchase the product.  Bd. of Educ. of City of Chicago v. A, C & S, Inc., 546 N.E.2d 580, 595 (Ill. 1989) ("[I]n order to state a claim against the defendant for breach of implied warranty, privity must exist between the plaintiff and defendant.").  However, "absence of privity will not bar an action based on implied warranty when the plaintiff is a third-party beneficiary to a contract." Chrysler Corp. v. Haden Uniking Corp., 1992 WL 373039, at *8 (N.D. Ill. Dec. 3, 1992) (collecting cases).  "To be a 'direct' beneficiary and therefore the third party beneficiary of a contract, the parties to the agreement must 'have manifested in their contract an intention to confer a benefit upon the third party.'"  Hunter v. Old Ben Coal Co., 844 F.2d 428, 432 (7th Cir. 1988) (quoting Altevogt v. Brinkoetter, 421 N.E.2d 182, 187 (Ill. 1981)).

Gatziolis asserts that she was the intended third party beneficiary of the sale between Pella and its distributors, and is therefore entitled to enforce the implied warranty claim based on Pella's false description of the product.  Pls.' Resp. 12; Am. Compl. ¶ 89, 96.  "The law of Illinois is that third-party beneficiary status may only be conferred where the identification of the third party to be benefited is clear and the benefit to him is direct."  Spiegel v. Sharp Elec. Corp., 466 N.E.2d 1040, 1044 (Ill. App. Ct. 1984).  A plaintiff cannot recover as a third-party beneficiary unless the facts "show an intent on the part of the [initial buyer] to confer the benefit."  Id. at 1045.  A seller's knowledge that the goods in question will be resold is not sufficient to render subsequent

11

purchasers third party beneficiaries. Id. (stating that "the alleged knowledge of defendant that the copiers would be resold to ultimate purchasers" was a "legally insufficient" basis for finding that plaintiff was to third-party beneficiary status).

In this case, the complaint states in a conclusory fashion that "[p]laintiffs . . . are intended beneficiaries of [the contracts with Pella's retailers, suppliers, and/or contractors] because it was the clear and manifest intent of Pella that the contracts were to primarily and directly benefit [p]laintiffs and the [c]lass [m]embers," and that "[a]t the time Pella entered into [the contracts], Pella knew and had reason to know that its [w]indows were being purchased for the particular purpose of being installed at [p]laintiffs' . . . properties." Am. Compl. ¶ 89, 96, 97. These bare assertions are insufficient, as they merely state the proposition plaintiffs are required to prove without alleging any facts that would indicate that such proposition was true. At most, plaintiffs appear to argue that Pella was aware that its windows would be resold. Such knowledge is not sufficient to render the ultimate purchasers of the windows third-party beneficiaries to Pella's contracts with its retailers, suppliers, and/or contractors. See Spiegel, 466 N.E.2d at 1045 (same as above); Altevogt v. Brinkoetter, 421 N.E.2d 182, 188 (Ill. 1981) (finding that "[a builder's] knowledge that a third party would occupy" did not render plaintiffs third-party beneficiaries to the contract between the builder and developer).

Pella also asserts that Gatziolis purchased a home in 2004 with previously installed Pella windows. Def.'s Mot. 17, Ex. 2. Gatziolis concedes that she did not purchase windows directly from Pella. Pl.'s Resp. 11. However, she argues that she is entitled to bring an implied warranty claims based on implied warranties created by her reliance on various advertising and marketing materials which Pella directed at

consumers.  Id.  Gatziolis relies on Wheeler v. Sunbelt Tool Co., 537 N.E.2d 1332, 1341

(Ill. App. Ct. 1989), which held that "[a] description of the product may create an implied

warranty of merchantability."  However, this holding does not allow Gatziolis to

circumvent the privity issue.  A more complete reading of Wheeler demonstrates that,

regardless of how an implied warranty is created, a plaintiff must be in privity with the

defendant to bring an action for the breach of such warranty.  Id. at 1340.  Before the

court even reached this issue of whether the implied warranty was created, the court held

that the plaintiff had satisfied the privity requirement due to their employment

relationship with the true purchaser of the goods and the fact that they sustained personal

injuries.  Id. at 1340 (applying Whitaker v. Lian Feng Mach. Co., 509 N.E.2d 591 (Ill.

App. Ct. 1987) (holding that "a warranty extends to any employee of a purchaser who is

injured in the use of the goods").  Gatziolis's reliance on Wheeler is misplaced.

Therefore, the court finds that Gatziolis's implied warranty claims fail for lack of

privity.

### 3.    Ordinary Purpose

Pella also contends that plaintiffs' claim for breach of the implied warranty of

fitness for a particular purpose fails because the windows were used for their ordinary

purpose.  Def.'s Mot. 17–18.

Under Illinois law, "[t]o state a claim for breach of implied warranty of fitness for

a particular purpose, plaintiffs must allege that (1) the seller had reason to know of the

particular purpose for which the buyer required the goods; (2) the buyer relied on the

seller's skill and judgment to select suitable goods; and (3) the seller knew of the buyer's

reliance on its skill and judgment."  In re McDonald's French Fries Litig., 503 F. Supp.

2d 953, 957 (N.D. Ill. 2007) (citation and quotation marks omitted).  "For such a

warranty to exist, the goods must be for a purpose other than their ordinary use." Id. (citation and quotation marks omitted).

Pella argues that because the windows were simply installed in plaintiffs' properties, they were not used for a particular purpose but rather their ordinary purpose. Def.'s Mot. 18. Plaintiffs appear to argue that because Pella knew the particular defect that would render the windows unsuitable for installation in plaintiffs' homes, they were aware of a particular purpose. See Pl.'s Resp. 12 ("Pella knew that these [w]indows would be installed in homes and that the particular defect would cause direct damage to the home thus failing to fulfill this pariticlar purpose.").

Plaintiffs argument is unavailing. A claim for breach of implied warranty of fitness for a particular purpose is clearly premised on a seller's knowledge of the buyer's particular purpose, not the particular nature of the defect. In re McDonald's French Fries Litig., 503 F. Supp. 2d at 957. "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those . . . uses which are customarily made of the goods in question." Wilson v. Massey-Ferguson, Inc., 315 N.E.2d 580, 582 (App. Ct. Ill. 1974).

Here, plaintiffs purchased Pella's windows for installation in their homes. Am. Compl. ¶¶ 95, 97, 100; Pls.' Resp. 12. This is an entirely customary use of windows, and is thus, an ordinary purpose. Therefore, the court finds that, regardless of any statute of limitations issues, plaintiffs have failed to plead a plausible claim for breach of the implied warranty of fitness for a particular purpose.

**B.    Express Warranty**

Pella argues that Sadler's express warranty claim is barred by the statute of limitations and that both plaintiffs have failed to adequately plead a breach of any express warranty.

**1.    Statute of Limitations/Failure to Accrue: Sadler's Claim**

Pella argues that Sadler's express warranty claim is barred by the statute of limitations.

The statute of limitations for express warranty claims in Illinois is four years.  810 Ill. Comp. Stat. 5/2-725(1).  As discussed above, the statute of limitations for a breach of warranty claim accrues when the goods are delivered, unless the warranty expressly extends to future performance of the goods, in which case the cause of action accrues when the breach is or should have been discovered.  810 Ill. Comp. Stat. 5/2-725(2).  When an express warranty covers a specific period of time, "the latest a breach of warranty can occur is at the very end of that period."  Mydlach v. DaimlerChrysler Corp., 875 N.E.2d 1047, 1060–61 (Ill. 2007); see also N. Ins. Co. of N.Y. v. Silverton Marine Corp., 2010 WL 2574225, at *2 (N.D. Ill. June 23, 2010) ("Under Illinois law, a plaintiff cannot bring an action for breach of express warranty when the complained of defect manifests after the warranty's expiration.").

Pella attaches documents to its motion indicating that Sadler's windows were purchased in 2002.  Def.'s Mot. Ex. 1.  Pella argues that because Sadler purchased the windows in 2002 and did not discover any rot until 2013, Am. Compl. ¶ 34, the warranty period expired before the defect manifested itself and therefore any breach of warranty

action is barred.[5]  See Def.'s Mot. 13.  Plaintiffs admit that Sadler first discovered the

defect in 2013, but argue that the windows were purchased in late 2002, early 2003, and

2004,[6] and therefore, Sadler's 2013 attempt to exercise the express warranty was within

the ten year warranty period provided for in Pella's limited warranty.[7]  Pls.' Resp. 13.

Plaintiffs further argue that, even if Sadler failed to discover the defect before the limited

warranty period expired, the limited warranty period cannot be enforced, because it was

unconscionable.[8]  Pl.'s Resp. 15–16, 16 n.12.

"Whether a contract clause is unconscionable is a matter of law to be determined

by the court."  Disher v. Tamko Bldg. Prods., Inc., 2015 WL 4609980, at *3 (S.D. Ill.

July 31, 2015) (citing 810 Ill. Comp. Stat. Ann. 5/2-302(1)).  "If the court finds any

clause of the contract to be 'unconscionable at the time it was made the court may refuse

to enforce the contract, or it may enforce the remainder of the contract without the

unconscionable clause, or it may so limit the application of any unconscionable clause as

to avoid any unconscionable result.'"  Id. (citing 810 Ill. Comp. Stat. Ann. 5/2-302(1)).

Courts have found that the doctrine of unconscionability can be applied to limitations on

the period in which a purchaser is permitted to bring a warranty claim, particularly in

cases where plaintiffs' claims are premised on the discovery of a latent defect.  See

Disher, 2015 WL 4609980, at *4 (finding that plaintiff stated breach of express warranty

---

[5]       While Pella styles this as a statute of limitations issue, the court notes that the dispute centers around whether Sadler's claim failed to accrue because it was not discovered within the warranty period. See Def.'s Mot. 13.  This seems more like an argument for why Sadler's breach of express warranty should fail on the merits.  Nevertheless, the court will proceed with its analysis.

[6]       It is not clear whether this assertion refers only to Sadler's purchases or both plaintiffs' purchases. At the hearing, plaintiffs stated that Sadler bought his windows from Pella on November 27, 2002.  Hr'g Tr. 79:14–15.  However, because the court finds the unconscionability issue to be dispositive of the instant motion, it need not resolve this confusion.

[7]       The parties do not explicitly agree that the limited warranty period lasts for ten years following the date of sale.  See Def.'s Mot. Ex. 1; Am. Compl. ¶ 54.

[8]       Though the briefing is somewhat ambiguous in that it references both the doctrine of unconscionability and the doctrine of and failure of essential purpose, plaintiffs appear to primarily rely on the doctrine of unconscionability with respect to the limited warranty period.

claim, despite failure to comply with time-period for notifying seller under limited warranty, because it was possible that the time-period was unconscionable); see also Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc., 2012 WL 1570057, at *10 (S.D. Fla. May 2, 2012) (dismissing argument that warranty claims were barred by time limitations and stating that "if a product contains a known latent defect then any warranty limits may be unconscionable"); Held v. Mitsubishi Aircraft Int'l, Inc., 672 F. Supp. 369, 383 (D. Minn. 1987) (finding that the "[repair and replace warranty period] provided in the contract [was] manifestly unreasonable as applied to an alleged latent design defect"); Trinkle v. Schumacher Co., 301 N.W. 2d 255, 256 (Wis. Ct. App. 1980) (finding time limitation for claims allowed by sales contract unconscionable where the "defective condition was not determinable until" after the cutoff time). "Unconscionability can be either 'procedural' or 'substantive' or a combination of both." Razor v. Hyundai Motor Am., 854 N.E.2d 607, 622 (Ill. 2006). "Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." Id. "Substantive unconscionability refers to those terms which are inordinately one-sided in one party's favor." Id.

Though the question of whether a particular limitation is unconscionable is a matter of law, courts "must give the parties a reasonable opportunity to present evidence" before making this determination. Disher, 2015 WL 4609980, at *3 (quoting Frank's Maint. & Eng'g, Inc. v. C. A. Roberts Co., 408 N.E.2d 403, 409 (Ill. App. Ct. 1980)). "Generally a full hearing on the issue is required." Id. (quoting Frank's Maint. & Eng'g., 408 N.E.2d at 409).

Here, plaintiffs have alleged that: (i) Pella knew of a latent defect in its windows; (ii) the limitations attached to Pella's express warranty "effectively prevent[ed]" any warranty claim; and (iii) they did not have any opportunity to negotiate or bargain over the warranties terms, as "Pella stood in a position of dominance and control." Am. Compl. ¶¶ 14, 16–18, 123, 124. These allegations are sufficient to create a plausible claim that the warranty's limitations were unconscionable, and therefore unenforceable. Because the parties have not had an opportunity to present evidence on the issue, the court is not in a position determine whether the warranty limitations are unconscionable as a matter of law. Consequently, the court is unable to determine whether Sadler's express warranty claim fails because it was discovered after the expiration of that period.

Therefore, at this stage, the court finds that Sadler has pleaded a plausible claim that his express warranty claim is not barred by the statute of limitations—or failure to discovery the grounds for the claim within the warranty period.

### 2. Failure to State a Claim

Pella also argues that plaintiffs fail to sufficiently plead the elements of a claim for breach of express warranty. Plaintiffs base their express warranty claim on a number of distinct warranties and breaches, specifically: (i) Pella's failure to repair and replace Gatzolis's windows under the limited warranty in 2011; (ii) Pella's failure to repair and replace Sadler's windows under the limited warranty in 2013; and (iii) Pella's breach of other express warranties created by various representations.

Under Illinois law, "[t]o state a claim for breach of express warranty, plaintiffs must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) the seller guaranteed that

the goods would conform to the affirmation or promise." Indus. Hard Chrome. Ltd. v. Hetran, Inc., 64 F. Supp. 2d 741, 747 (N.D. Ill. 1999) (citing Int'l Bhd. of Teamsters Local 734 Health & Welfare Trust Fund v. Phillip Morris, Inc., 34 F. Supp. 2d 656, 664 (N.D. Ill. 1998)). Since express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the various parties. Hasek v. DaimlerChrysler Corp., 745 N.E.2d 627, 634 (Ill. App. Ct. 2001).

Pella argues that plaintiffs fail to allege any act by Pella that violates any warranty obligations, including its obligation to repair or replace allegedly defective windows for which Pella received notice during ten years starting from the date of purchase. Pella argues that Sadler was simply "[u]nsatisfied" with Pella's offer to replace certain windows pursuant to the terms of the limited warranty and Gatziolis did not invoke the limited warranty.

### a.      Sadler's Repair and Replace Claim

Plaintiffs allege that after Sadler notified Pella of the problems with his windows, Pella offered to replace the windows, but required Sadler to pay over $1,700 for the cost of the replacement windows and the costs of installation. Am. Compl. ¶ 35. This allegation suggests that Pella did not acknowledge Sadler's problems as issues which were covered by the limited warranty at all, but simply offered to sell Sadler new windows. Drawing all reasonable inferences in plaintiffs' favor, plaintiffs appear to argue that Sadler attempted to invoke the limited warranty, but was prohibited from doing so by the allegedly unconscionable limited warranty period. Pl.'s Resp. 14, 16 n.12. As discussed above in section III.B.1., plaintiffs have stated a plausible claim that the limited warranty period is unconscionable, and thus, unenforceable. Therefore, Pella's argument

19

that Sadler did not contact Pella during the limited warranty period is inapposite at this

juncture, because the court is unable to resolve the unconscionability issue.

Plaintiffs further argue that the limited warranty fails of its essential purpose

because it requires purchasers to pay disproportionate costs for installation of

replacement windows.  Pl.'s Resp. 15–16.  Pella argues that plaintiffs have failed to plead

the elements of failure of essential purpose.  Def.'s Reply 10.

The court finds it unnecessary to address this argument at this time.  Whatever the

status of the cost of labor provision, plaintiffs have sufficiently alleged a breach of

warranty based on Pella's demand that Sadler pay for the replacement costs of the

windows.  Am. Compl. ¶ 35.  The limited warranty guaranteed that, if notified of a defect

in materials or workmanship, Pella would "repair or replace" the windows.  Id.  ¶ 54.

Thus, assuming the ten year limited warranty period is unenforceable as discussed above,

Pella's demand that Sadler pay for the replacement windows was in violation of the

limited warranty.  Therefore, the court finds that at the motion to dismiss stage plaintiffs

have sufficiently pleaded a claim for breach of express warranty regarding Pella's failure

to repair or replace Sadler's windows.

### b.        Gatziolis's Repair and Replace Claim

Plaintiffs next argue that Gatziolis attempted to invoke limited warranty by

contacting Pella about problems with its windows in 2011, but Pella denied that any

defect existed.  See Am. Compl. ¶ 40.  Thus, Gatziolis has identified the repair and

replace provision of the limited warranty as a promise relating to the goods, and alleged a

breach of that promise by Pella.  See Am. Compl. ¶ 40, 54; Pl.'s Resp. 14.  The court

finds this sufficient to plead a claim for breach of express warranty regarding Pella's
failure to repair or replace Gatziolis's windows.

### c.    Breach of Express Warranties Created By Various Representations Outside of the Limited Warranty

Plaintiffs also argue that Pella breached various representations outside of the
written limited warranty, including that the windows conformed to certain codes and
standards, Am. Compl. ¶ 45, and that the windows have proven resistance to water
penetration.  Id. ¶ 48.  Pella broadly claims that these allegations are insufficient to plead
a claim for breach of express warranty because plaintiffs have not identified the actual
documents that form the basis of these alleged warranties.[9]

Pella cites no authority for the proposition that plaintiffs are required to identify
the specific documents in their complaint.  To the extent Pella argues that plaintiffs'
failure to identify the source of the representations constitutes a failure to plead facts
showing that such representations were guaranteed or promised, or that they "formed the
basis of the bargain," the court disagrees.  See Hetran, 64 F. Supp. 2d at 747 (listing
elements of Illinois claim for breach of express warranty).  Plaintiffs' allegation that Pella
represented that the windows were free from defects through its website, brochures,
marketing materials, and representatives provides sufficient indication of the manner in
which Pella's warranties were made and how they became part of the bargain.  See 810

---

[9]    Pella also argues that the alleged statements from Pella's Owners' Manual, Am. Compl. ¶ 48,
cannot constitute express warranties because the Owners' Manuals accompanying plaintiffs' windows did
not contain any such statements.  Def.'s Reply 9, Exs. 1, 2.  Instead, Pella contends, these statements come
from a 2012 Pella brochure published years after plaintiffs' windows were purchased.  Def.'s Reply Ex. 3.
    Courts may consider documents outside of the complaint at the Rule 12(b)(6) stage when: (i) the
document was attached to the motion to dismiss, and is clearly integral to, and was relied upon in, the
complaint; and (ii) the plaintiff does not dispute the document's authenticity.  Blankenship v. Manchin, 471
F.3d 523, 526 n.1 (4th Cir. 2006).  Here, the documents relied on by Pella were attached to Pella's reply,
not the motion to dismiss, and plaintiffs have disputed their authenticity.  Hr'g Tr. 81:2–6.  Therefore, the
court will not consider Pella's argument that such representations cannot form the basis of plaintiffs'
express warranty claim.

Ill. Comp. Stat. Ann. 5/2-313(1)(a)–(c) (recognizing that express warranties may be created by "[a]ny affirmation of fact or promise . . . that relates to the goods," "[a]ny description of the goods," and "[a]ny sample or model" of the goods).

Therefore, the court finds that plaintiffs have sufficiently pleaded a claim for breach of express warranty based on representations made through Pella's website, brochures, marketing materials, and representatives.

### C.    Negligence

Pella argues that plaintiffs' negligence claim fails because it is barred by the economic loss rule.

The economic loss rule states that "recovery for solely economic losses in relation to a product may not be had upon a tort theory of negligence." Muirfield Vill.-Vernon Hills, LLC v. K. Reinke, Jr. & Co., 810 N.E.2d 235, 247 (Ill. Ct. App. 2004). "Economic losses" have been defined as "damages for inadequate value, costs of repair and replacement of the defective product, or the consequent loss of profits . . . as well as the diminution of value of the product due to its inferior quality." Redarowicz v. Ohlendorf, 441 N.E.2d 324, 327 (Ill. 1982) (internal quotations omitted). "The rationale for the economic loss rule is that the manufacturer of the product should not be held liable for downstream losses caused by the product failing to meet the purchaser's specific business expectations." Muirfield Vill.-Vernon Hills, 810 N.E.2d at 247.

Plaintiffs may recover in tort for damage to "other property" resulting from a product's defect, but this exception to the economic loss rule does not apply "when a defective product causes the type of damage one would reasonably expect as a direct consequence of the failure of the defective product." Trans States Airlines v. Pratt &

Whitney Canada, Inc., 682 N.E.2d 45, 58 (Ill. 1997) (barring recovery for damage to an aircraft's frame caused by a defective engine when the aircraft frame and engine were purchased together, as an airplane); see also Mars, Inc. v. Heritage Builders of Effingham, Inc., 763 N.E.2d 428, 438 (Ill. Ct. App. 2002) (barring recovery for the collapse of a warehouse frame during construction when the parties bargained for the construction of an entire warehouse).

Plaintiffs argue that they have alleged damage to "other property" and thus, the economic loss rule does not apply. Pl.'s Resp. 23. Specifically, plaintiffs allege damage, particularly fungal and mold contamination, to the wall cavities and the underlying structures in which the windows were installed. Id. Pella argues that such damages cannot be considered damage to "other property" within the meaning of the economic loss doctrine. Def.'s Reply 14.

This court considered an analogous question in Kennedy v. MI Windows & Doors, Inc., in which the plaintiff argued that the economic loss doctrine did not bar claims under Illinois law for damages to "adjoining finishes, walls, and other property." No. 2:12-cv-2305, 2013 WL 267853, at *4 (D.S.C. Jan. 24, 2013). The court rejected this argument, finding that such damage falls within the scope of Illinois's economic loss rule. Id. Similarly, in Chicago Heights Venture v. Dynamit Nobel of Am., Inc., 782 F.2d 723 (7th Cir. 1986), the Seventh Circuit, applying Illinois law, held that tort recovery was not allowed for an action which sought compensation for water damage to the ceilings and walls of an apartment building resulting from defendant's negligence in supplying and installing roofing material. The court concluded:

> Since [the roofing material] was necessarily attached to the structure, its malfunction necessarily caused incidental damage to the surrounding parts

> of the structure. The gravamen of the complaint-simply stated-is that the
> roof did not work. The district judge properly viewed such an allegation as
> a matter of economic loss, the result of a qualitative defect.

782 F.2d at 729; see also Wash. Courte Condo. Ass'n-Four v. Washington-Golf Corp.,

501 N.E.2d 1290, 1294 (Ill. App. Ct. 1986) (holding that that property damage to

insulation, walls, ceiling, floors, and electrical outlets "resulting from water leak[ing from

windows and sliding doors] constitutes deterioration from a latent defect not recoverable

in tort").

As in Kennedy and the other cases cited above, plaintiffs have alleged damage to

a building caused by one of its component parts—in this case, the windows.  This sort of

damage falls within the scope of Illinois's economic loss rule.[10]

Therefore, the court finds that plaintiffs have failed to state a claim for

negligence.

**D.    Common Law Fraud Claims**

Pella argues that plaintiffs' claims for fraudulent misrepresentation and fraudulent

concealment[11] fail because they fail to plead fraud with particularity as required by Rule

9(b).[12]  Def.'s Mot. 20.

---

[10]      To the extent that plaintiffs argue that mold and fungal contamination of the buildings constitutes
damage to "other property" or otherwise escapes the economic loss rule, the court finds this argument to be
unpersuasive.  Plaintiffs rely on A, C & S and a number of other asbestos/toxic insulation cases from other
jurisdictions for the proposition that contamination of a building constitutes damage to "other property."
Pl.'s Resp. 24.  Faced with the same argument in Kennedy, this court determined that A, C & S, a case
involving the mandatory removal of asbestos from public school buildings, as required by Illinois state law,
is distinguishable from cases involving contamination of a private residence.  Kennedy, 2013 WL 267853,
at *5 n.2.  Here, as in Kennedy, the plaintiffs are "not required by law to remove the mold or microbial
growth from [their] home."  Id.  As the A, C & S court cautioned,

> The nature of the "defect" and the "damage" caused by asbestos is unique from most of
> the cases we have addressed. . . . [T]he holding in this case should not be construed as an
> invitation to bring economic loss contract actions within the sphere of tort law through
> the use of some fictional property damage.

A, C & S, at 588.

Illinois recognizes fraud claims based on both misrepresentations and omissions. Weidner, 932 N.E.2d at 605. "The elements of a claim for fraudulent misrepresentation, also referred to as common law fraud, are: (1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance." Id. "In addition to these elements, in order to prove fraud by the omission of a material fact, 'it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak.'" Id. (quoting Lidecker v. Kendall Coll., 550 N.E.2d 1121, 1126 (Ill. App. Ct. 1990)). As discussed above in the context of fraudulent concealment-based tolling, a duty to speak arises when: (1) "the defendant's acts contribute to the plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct plaintiff's misapprehension," or (2) the defendant owes the plaintiff a fiduciary duty to make full and fair disclosure. Olmarc Packaging Co., 620 F. Supp. at 973 (N.D. Ill.

---

[11] The court notes that in certain instances, courts have recognized a claim of fraudulent misrepresentation by omission as a claim for fraudulent concealment, while other courts seem to view the claims as distinct. Compare Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor, 692 N.E.2d 812, 816 (1998) (referring to fraudulent misrepresentation based on omission as fraudulent concealment) with Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co., 936 F. Supp. 2d 933, 945 (N.D. Ill. 2013) (noting that "[defendant] appears to have accepted [plaintiff's] clarification in response that it is pursuing a claim for fraudulent omission rather than fraudulent concealment"). Thus, it is not entirely clear whether plaintiffs' fraud-based claims, to the extent they are based on omissions, may be brought separately or exclusively under the label of fraudulent concealment. As the parties have not briefed the issue, and there appears to be some support for the proposition that common law fraud by omission and fraudulent concealment are separate claims, the court will adopt that position for the purposes of the instant motion.

[12] Pella also argues that plaintiffs fail to identify any causal nexus between any misrepresentation or omission by Pella and either plaintiff's decision to purchase the windows. Def.'s Mot. 20. Because a claim for fraud necessarily requires "action by the [plaintiff] in reliance on the truth of the statements" and "damage [] resulting from such reliance," Weidner v. Karlin, 932 N.E.2d 602, 605 (2010), plaintiffs will necessarily be required to plead a causal nexus between Pella's misrepresentations or omissions and their injury in order to satisfy the particularity requirements of 9(b). Therefore, the court will treat Pella's causal nexus argument as being subsumed within the particularity argument.

1985).  Thus, the court must evaluate whether plaintiffs have sufficiently pleaded fraud under either an affirmative misrepresentation theory or fraud by omission theory.

As discussed above, Rule 9(b) generally requires plaintiffs pleading fraud to allege the "who, what, when, where and how of the alleged fraud," U.S. ex rel. Ahumada, 756 F.3d at 280, or the "first paragraph of any newspaper story."  Great Plains Trust Co., 492 F.3d at 995; see also U.S. ex rel. Elms, 341 F. App'x at 872 (holding Rule 9(b) requires a plaintiff to allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby").  When evaluating fraud claims based on omissions, "a plaintiff usually will be required to allege the following with reasonable particularity:"

> (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

Breeden, 171 F.R.D. at 195.

To the extent plaintiffs' fraud-based claims are premised on affirmative misrepresentations, they fail to meet this standard.  The amended complaint attributes each of the alleged misrepresentations to "Pella."  Am. Compl. ¶ 145–49.  However, this designation is unclear under the circumstances, as plaintiffs have not indicated that they had any contact with Pella prior to or at the time of purchase.  Moreover, there is no indication of the time or place where such misrepresentations were made.  Therefore, to the extent plaintiffs' fraud and fraudulent misrepresentation claims are premised on

affirmative misrepresentations, they have not been pleaded with the specificity required under Rule 9(b).

Nevertheless, for the reasons discussed above in section III.A.1., plaintiffs' fraud-based claims meet the requirements of Rule 9(b) to the extent they are based on omissions.

### E.     ICFA

Pella argues that plaintiffs fail to state a claim for relief under the ICFA. Def.'s Mot. 22–25.

"A[n] [ICFA] claim requires (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." De Bouse v. Bayer, 922 N.E.2d 309, 313 (Ill. 2009). Though the ICFA recognizes that a deceptive act or practice may occur via omission, the ICFA requires that such an omission occur within the context of some affirmative communication. See id. at 316 ("If there has been no communication with the plaintiff, there have been no statements and no omissions."); see also Ciszewski v. Denny's Corp., 2010 WL 1418582, at *3 (N.D. Ill. Apr. 7, 2010) ("The Illinois Supreme Court has recently made it clear that a consumer cannot maintain an ICFA claim absent some communication from the defendant, either a communication containing a deceptive misrepresentation or one with a deceptive omission.").

As discussed above, plaintiffs have sufficiently alleged damage resulting from Pella's omissions of material facts. Plaintiffs also allege that Pella made various representations concerning the quality of the windows, Am. Compl. ¶¶ 45, 48, which

became part of the basis of the bargain when they purchased their windows.  Am. Compl. ¶¶ 46–47.  In the context of such statements, Pella's omissions form the basis of a plausible ICFA claim.

Because ICFA claims must be pleaded with particularity under Rule 9(b), Saltzman v. Pella Corp., 2007 WL 844883, at *3 (N.D. Ill. Mar. 20, 2007), and ICFA claims based on omissions require the aforementioned affirmative communications, it might be argued that plaintiffs are required to plead such communications with particularity comparable to that required in cases of fraud by misrepresentation. However, the court does not find this to be the case, as other courts have found comparable allegations to sufficient to plead an ICFA claim.  See Pappas v. Pella Corp., 844 N.E.2d 995, 999–1000 (Ill. Ct. App. 2006) (finding that plaintiffs their ICFA claims with sufficient particularity where they alleged that "[defendant] knew its aluminum clad windows would allow water to enter, causing wood rot and deterioration, and failed to disclose these facts to plaintiffs prior to their purchase of the windows," and that plaintiffs would not have purchased the windows had they been informed of those facts");  Perona v. Volkswagen of Am., Inc., 684 N.E.2d 859, 867 (Ill. Ct. App. 1997) (finding plaintiffs pleaded their ICFA claims with sufficient particularity where they alleged "that [defendant] failed to disclose [the] defects" and "that the [defect] was a material fact in that they would not have purchased their [] automobiles if [defendant] had previously disclosed the safety risk"); see also Saltzman v. Pella Corp., 2007 WL 844883, at *2 (N.D. Ill. Mar. 20, 2007) (finding plaintiffs' pleading comparable to those in Pappas and determining that such pleadings met the particularity requirements of Rule 9(b)).

Therefore, the court finds that plaintiffs have sufficiently pleaded a claim for violation of the ICFA.

**F.    Unjust Enrichment**

Pella argues that plaintiffs' unjust enrichment claim should be dismissed because plaintiffs have an adequate remedy at law.  Pella also argues that Gatziolis has conferred no benefit on Pella that would give rise to an unjust enrichment claim.

**1.    Adequate Remedy at Law**

"To state a cause of action based on the theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience."  Muehlbauer v. Gen. Motors Corp., 431 F. Supp. 2d 847, 851–52 (N.D. Ill. 2006) (citing Firemen's Annuity & Benefit Fund of City of Chicago v. Mun. Employees', Officers', & Officials' Annuity & Ben. Fund of Chicago, 579 N.E.2d 1003, 1007 (1991)).  Illinois law does not permit a party to recover on an unjust enrichment claim when an actual contract governs the parties' relations on the issue.  Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc., 517 F.3d 476, 487 (7th Cir. 2008) (citing Illinois ex rel. Hartigan v. E & E Hauling, Inc., 607 N.E.2d 165, 177 (Ill. 1992)).  However, "mere invocation of a written contract does not automatically bar an unjust enrichment claim."  Muehlbauer, 431 F. Supp. at 856 (N.D. Ill. 2006).  Where there is a question as to whether the issue underlying a party's unjust enrichment claim is covered by an existing contract, courts have found it inappropriate to dismiss such claims at the motion to dismiss stage.  See Saltzman, 2007 WL 844883, at *6 (noting that it is "premature, in the context of a 12(b)(6) motion, to dismiss an unjust enrichment claim

based on the existence of a contract," where defendant argued that similar unjust enrichment claims were covered by a similar express warranty (citing Muehlbauer, 431 F. Supp. 2d at 855–56)).

Here, plaintiffs allege that Pella's retention of the revenues derived from the sale of the windows is unjust because the windows were defective in design, unfit for their ordinary and intended use, and failed to perform in conformance with advertisements, marketing materials, or the plaintiffs' reasonable expectations. Am. Compl. ¶ 168. It is not clear that the limited warranty, which applied to defects in materials or workmanship, governed the windows conformance with such descriptions. As in Satlzman, the court finds that it cannot determine whether plaintiffs unjust enrichment claim is precluded by the existence of an actual contract at the motion to dismiss stage.

### 2. Gatziolis Conferred No Benefit

Pella also argues that because Gatziolis purchased her home with windows already installed, she conferred no benefit on Pella to her own detriment.

In assessing a claim for unjust enrichment, Illinois courts "emphasize the defendant's retention of the benefit, rather than plaintiff's conferral." Muehlbauer, 431 F. Supp. 2d at 852; see A.P. Properties, Inc. v. Rattner, 960 N.E.2d 618, 621 (Ill. App. Ct. 2011) ("To state a claim for unjust enrichment, a complaint must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."). Courts have found that determining whether "the connection between [a plaintiff's] detriment and [a defendant's] benefit" is "too attenuated to support any conferral of benefit from plaintiffs to defendant," "present[s] questions of degree, and

ultimately of fact." <u>Muehlbauer</u>, 431 F. Supp. 2d at 856 (citing <u>In re Cardizem CD</u>

<u>Antitrust Litig.</u>, 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000)).

Nevertheless, the pleading standard established in <u>Iqbal</u> requires plaintiffs to

allege facts stating a "plausible claim for relief." <u>Iqbal</u>, 556 U.S. at 679. While the court

in <u>Muehlbauer</u> found that the plaintiffs' unjust enrichment actions "need not plead facts

and need not narrate events that correspond to each aspect of the applicable legal rule,"

<u>Muehlbauer</u>, 431 F. Supp. 2d at 854 (quoting <u>Kolupa v. Roselle Park Dist.</u>, 438 F.3d 713,

715 (7th Cir. 2006)), the <u>Kolupa</u> decision, which was relied on by the <u>Muehlbauer</u> court

for this proposition, was overruled by <u>Twombly</u>. <u>E.E.O.C. v. Concentra Health Servs.</u>,

<u>Inc.</u>, 496 F.3d 773, 777 (7th Cir. 2007) (explaining that <u>Kolupa</u> was "no longer valid in

light of the Supreme Court's recent rejection of the famous remark in <u>Conley v. Gibson</u>[,

355 U.S. 41, 45–46 (1957)] from which [it] derive[s], that 'a complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief'" (citing

<u>Twombly</u>, 550 U.S. at 561)). Thus, Gatziolis must allege some plausible connection

between Pella's benefit and her own detriment.

Here, the amended complaint states that "[p]laintiff Gatziolis's home was built in

2004, at which time Pella windows were installed." Am. Comp. ¶ 36. At best, this

allegation indicates that Gatziolis owns a home containing Pella windows. It does not

suggest that Gatziolis purchased such windows directly, or even indirectly.[13] Nor is there

---

[13]     Plaintiffs clarified this ambiguity at the hearing, stating that "Ms. Gatziolis bought a house that
already had Pella windows in it that her builder selected." Hr'g Tr. 79:3–4. Nevertheless, because and "it
is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," the
court will not consider these facts in deciding the instant motion. <u>Fieger v. Supreme Court of S.C.</u>, No.
C/A 3:10-1038, 2010 WL 3521606, at *4 (D.S.C. Aug. 16, 2010) (quoting <u>Myland Labs., Inc. v. Akzo</u>, 770
F. Supp. 1053, 1068 (D. Md. 1991)).

any suggestion that Gatziolis's eventual ownership of the windows was even contemplated at the time the windows were sold.  Thus, this case is distinguishable from Muelbauer and other cases that have found valid unjust enrichment claims without finding a direct conferral of any benefit.  See Muehlbauer, 431 F. Supp. 2d at 852 (finding possible conferral of a benefit to automobile manufacturer, where plaintiffs purchased and leased automobiles through dealers, not from defendant directly);  In re Cardizem CD Antitrust Litig., 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000) (finding that heart medication purchasers' lack of privity with manufacturer did not prevent them from conferring a benefit).  In those cases, plaintiffs were the ultimate purchasers of products that were distributed through a series of transactions.  In such situations, the end-user is clearly contemplated by each step of the distribution process and thus has some relationship to it.  However, manufacturers cannot be said to receive a benefit from anyone who at some point acquires their product, which is all the court knows of Gatziolis.  Though it is of course possible that such persons might confer a benefit on the original manufacturers, it cannot be said that they do so in every case.  Thus, such plaintiffs must plead their claims with sufficient specificity to indicate the manner in which a benefit was conferred.  Gatziolis has not done so here.

Therefore, the court finds that, Gatziolis has failed to sufficiently plead a claim for unjust enrichment.

### G.     MMWA

Pella first argues that because the MMWA does not create a warranty itself but is instead a vehicle for enforcing warranties created by state law, and plaintiffs' state law warranty claims fail, plaintiffs' MMWA claim should also fail.  See Clemens v.

DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008) (holding that MMWA claims "hinge on the state law warranty claims"); Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 405 (7th Cir. 2004) (noting that the MMWA borrows state law causes of action); Carlson v. Gen. Motors Corp., 883 F.2d 287, 291 (4th Cir. 1989) (holding that the MMWA "operates in conjunction with state law to regulate the warranting of consumer products" (emphasis in original)). The parties agree that whether plaintiffs' MMWA claim is cognizable depends on whether the state law warranty claims are cognizable. Because the court finds that plaintiffs' have sufficiently pleaded a claim for breach of express warranty, their MMWA claim should not be dismissed on this basis.

Pella also argues that the MMWA is inapplicable to Gatziolis's claims because Gatziolis did not purchase a "consumer product" as defined by the MMWA. Def.'s Mot. 27. The MMWA applies to "consumer products," which include "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)." 15 U.S.C. § 2301(a). The Federal Trade Commission, which has authority to implement the MMWA, 15 U.S.C. § 2312(c), has issued a regulation clarifying when real property related products may be considered consumer products under the MMWA:

> The numerous products which go into the construction of a consumer dwelling are all consumer products when sold "over the counter," as by hardware and building supply retailers. This is also true where a consumer contracts for the purchase of such materials in connection with the improvement, repair, or modification of a home (for example, paneling, dropped ceilings, siding, roofing, storm windows, remodeling). However, where such products are at the time of sale integrated into the structure of a dwelling they are not consumer products as they cannot be practically distinguished from realty. Thus, for example, the beams, wallboard, wiring, plumbing, windows, roofing, and other structural components of a

dwelling are not consumer products when they are sold as part of real estate covered by a written warranty.

16 C.F.R. § 700.1(e) (emphasis added). One court has interpreted the phrase "at the time of sale" to mean point at which the consumer and supplier enter into a binding contract, not the time when the product is ultimately furnished to the consumer and payment is due. Muchisky v. Frederic Roofing Co., 838 S.W.2d 74, 78 (Mo. Ct. App. 1992).

Plaintiffs use this understanding of the phrase "at the time of sale" to argue that the Pella's windows are consumer products because they were not integrated into Gatziolis's home "at the time of their original purchase." Pl.'s Response 19. Even if this argument were sound, plaintiffs have not pleaded any facts indicating how Gatziolis acquired the windows. As discussed above in section III.G.2., the amended complaint only indicates that Gatziolis owns a home containing Pella windows. See Am. Compl. ¶ 36 ("Plaintiff Gatziolis's home was built in 2004, at which time Pella windows were installed."). Thus, the complaint lacks any inidication that the windows were not installed in the house at the time they were purchased by Gatziolis.

To the extent plaintiffs argue that the windows constitute consumer products because they were not installed in the home at the time some previous, unspecified purchaser acquired them from Pella,[14] their argument fails as a matter of law. The court finds this interpretation of the phrase "at the time of sale" highly suspect, as it would render every real estate related product a consumer product, unless the original manufacturer kept ownership of the product until after it was physically integrated into a home—a seemingly rare set of facts. It is clear that the phrase "original purchase" refers to the plaintiffs' original purchase, not some third party's. Moreover, plaintiffs'

---

[14]    Even this allegation is not obvious from the amended complaint.

argument is plainly at odds with 16 C.F.R. § 7001(f), which states that "where a consumer contracts with a builder to construct a home . . . the building materials to be used are not consumer products," 16 C.F.R. § 700.1, along with a number of court decisions to that effect.[15]  See Miller v. Herman, 600 F.3d 726, 737 (7th Cir. 2010) (finding that windows purchased by contractor for plaintiff's new home did not constitute "consumer products" under MMWA, noting that plaintiff only contracted for a new home and there was no "evidence showing a separate contract for the windows, or a separate transaction for them in which he was [plaintiff] engaged"); see also Weiss v. MI Home Products, Inc., 877 N.E.2d 442, 445 (Ill. App. Ct. 2007) ("It appears that as to products that become a part of realty, the distinction drawn is whether the product is being added to an already existing structure or whether it is being utilized to create the structure."); Muchisky, 838 S.W.2d at 78 (same).

Therefore, the court finds that, with regard to Gatziolis, plaintiffs have failed to sufficiently plead a claim under the MMWA.

### H.     Declaratory Relief

Pella argues that plaintiffs' claim for declaratory relief fails because they lack a substantive foundation and because they have an adequate remedy at law.  Def.'s Mot. 28–29.

The Declaratory Judgment Act states that

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

---

[15]     Though the court cannot be certain from the amended complaint, the plaintiffs have indicated that Gatziolis contracted to purchase a house from a builder who then selected the Pella windows.  Hr'g Tr. 79:3–4.  However, the court cannot use this admission as the basis for its decision, for the reasons discussed in footnote 13, above.

28 U.S.C.A. § 2201. The Declaratory Judgment Act is intended to help parties resolve legal disputes before either party can seek or has sought a coercive remedy through the courts. 10B Charles Alan Wright & Arthur A. Miller, Federal Practice and Procedure § 2751 (3d ed. 1998). Courts have "long recognized the discretion afforded to district courts in determining whether to render declaratory relief." Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421–22 (4th Cir. 1998).

Declaratory relief is inappropriate at this stage, as the merits of plaintiffs' substantive claims have not been adjudicated. See Kennedy v. MI Windows & Doors, Inc., No. 2:12-cv-2305, 2013 WL 267853, at *6 (D.S.C. Jan. 24, 2013); F.D.I.C. v. OneBeacon Midwest Ins. Co., 883 F. Supp. 2d 754, 761–62 (N.D. Ill. 2012) (dismissing a declaratory relief claim that raised the same issue as a substantive legal claim already before the court); Vill. of Sugar Grove v. F.D.I.C., 2011 WL 3876935, at *9 (N.D. Ill. Sept. 1, 2011) ("We have discretion to decline to hear a declaratory judgment action and courts have exercised that discretion where a plaintiff seeks a declaratory judgment that substantially overlaps it substantive claims.") (internal citations omitted); Monster Daddy LLC v. Monster Cable Prods., Inc., No. 6:10-cv-1170, 2010 WL 4853661, at *6 (D.S.C. Nov. 23, 2011) (dismissing three declaratory relief counterclaims because they "raise the same legal issues that are already before the court").

Therefore, the court dismisses plaintiffs' claims for declaratory relief.

## IV.  CONCLUSION

For the foregoing reasons the court **GRANTS IN PART AND DENIES IN PART** Pella's motion to dismiss and **DISMISSES WITHOUT PREJUDICE** the plaintiffs' claims for: (i) breach of implied warranty of merchantability, to the extent it relates to plaintiff Gatziolis; (ii) breach of implied warranty of fitness for a particular purpose; (iii) negligence; (iv) fraudulent misrepresentation, to the extent it relies on affirmative misrepresentations; (v) fraudulent concealment, to the extent it relies on affirmative misrepresentations; (vi) violation of the MMWA, to the extent it relates to plaintiff Gatziolis; (vii) unjust enrichment, to the extent it relates to plaintiff Gatziolis; and (viii) declaratory judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 23, 2015**
**Charleston, South Carolina**

37